The last case for this morning, but not the last case for today, because we have an afternoon case, too. And the last case for this morning is United States v. Donald Miller Let us get our papers in shape. Thank you. May it please the Court, my name is Ronald Kraus. I'm an assistant federal public defender for the Middle District of Pennsylvania, and I represent the appellant Donald Miller. I would like to reserve three minutes for rebuttal, please. This morning I will address two issues. First, the threshold jurisdictional issue of whether the Court can entertain Mr. Miller's supervised release issues when he did not raise them either in the district court or in the circuit court in Miller 1. Then, second, I'd like to address the merits of Mr. Miller's argument that the district court abused its discretion in the terms and conditions of supervised release. Why didn't you raise the issue the first time before the district court? I have no good answer for that question, Your Honor. I truly don't mean to be blunt, but isn't this case more susceptible to a 2255 than it is to what is confronting us right now and a second direct appeal? It may well be, Your Honor. And if our office has to cooperate in that, we certainly will do that. It was nothing precluding the defendant the first time before the district court from raising the very issues that were raised the second time. That's correct, Your Honor. I didn't handle the district court case, but I can say for myself also on appeal, I think Mr. Miller was facing such serious charges at trial and in his sentencing calculations that perhaps the supervised release terms were put on the back burner and we didn't focus on them. I think it's fair to say that they weren't as important as some of these other issues. And we were rather successful on appeal. And we were also rather successful. And then on remand. And then on remand, we were also rather successful. And it was there, I think, that the trial lawyer was able, felt comfortable to focus on the supervised release terms. When it went back to the district court after the remand, did it sort of wipe off everything so that the district court was free to reconsider the whole sentence, including the supervised release? Well, that's the heart of the issue, Your Honor. The government takes a position that Mr. Miller could not raise those issues because he did not raise them in Miller 1. Well, we know that, but I'm asking you whether the remand was left the district court free to reconsider, sort of wiped off everything, wiped out everything that happened before. So the district court could reconsider it. I would argue that it would. Which would make, which would mean that that which might have been waived before could still be raised again, if that's true. Yes. Now, I think it's very clear that the judgment in Miller 1 was a general remand. A general remand. A general remand. The court vacated the district court's decision, remanded for further proceedings, and said all of the above in accordance with the opinion of this court. That means a complete new sentence. I would argue that it would, Your Honor. Now, I know this is an issue that you- But what about the last phrase that you just read, however? Yeah, consistently. Yes, it says in accordance with, I'm sorry, all of the above in accordance with the opinion of this court. That brings an awful lot into the equation, doesn't it? Everything that has been addressed by the prior panel of this court, which necessarily limits what the district court would be required to address in remand. Is it not? I would take the position, Your Honor, that you look at it from the other perspective, that the remand did not limit the district court on its remand. And certainly, when this court wishes to limit the district court on remand, it can certainly do so. I've found examples of cases, I'll just give you two examples. This is a case of United States v. Dixon, which is a 2003 non-presidential case where- A non-presidential case. Non-presidential case. Didn't happen. But the court there- It's like the tree that fell in the forest and nobody was there to hear it and didn't make it. It's an existential question, really. Well, in that case, the court said it was remanding for the sole and limited purpose of correcting the sentence by resentencing defendant to a total term of imprisonment of no more than 75 months. Our mandate to the district court then was, to use our word, extraordinarily limited. So I would say that when this court wants to limit the remand, it does so very explicitly. Mr. Kress, doesn't U.S. v. Poltron create an enormous hurdle for you? Doesn't the language of our opinion in Poltron make it awfully difficult for you? I'm referring specifically to the language of that case that refers to allegations of error that could and should have been raised in a direct way. Well, I did discuss in my brief reasons why I think Poltron is distinguishable. Poltron did not raise issues about his conviction in the first appeal. The Poltron court appeared to explicitly base its holding on the fact that Poltron voluntarily withdrew his appeal. The mandate in Poltron specifically directed a limited remand to impose the minimum standard. Let's focus on that voluntary withdrawal. And I'm not sure I read our opinion that way, but I'll take another look at it. But indulge me for a moment. Isn't it possible that if we say, after there's been voluntary withdrawal of an appeal, that you can't raise these issues again, a fortiori, if you've pursued the appeal to conclusion when you would have had an opportunity to at least attempt to raise them, that you shouldn't have that opportunity again, as is the case here? Isn't that a reasonable way to read the procedural history of this case versus Poltron? Well, I think that the voluntary withdrawal in Poltron was not the decisive factor in that case. I think more important was that there was a limited remand to impose a statutory minimum sentence. But he withdrew his appeal before that decision was made. Yes, that's right. Is that the case? That's true. So he pretty much abandoned whatever claims he had, even before the appellate court had ruled on his appeal. That's another way to view the voluntary withdrawal. I'd also like to note that the two Tenth Circuit cases that the Poltron court relied on for its decision were followed by a Tenth Circuit case, United States versus Smith, in 1991, which permitted de novo resentence. Now, this is an issue that... Haven't we adopted a sentencing package doctrine where if the case is going to be sent back for resentencing, then it essentially changes the calculus so that a defendant can pretty much weigh what he or she is facing and then assert whatever issues he or she wants. Well, that's the position you took, Your Honor, in the Giraldo case. You noted that the circuits were split on this very issue. In fact, it's the 6th, 8th, 9th, 10th, and 11th Circuits all follow a de novo policy, and the other courts tend to follow more of a waiver policy. But as Your Honor noted in Giraldo, you picked up language from a D.C. Circuit case, the Wren case, W-H-R-E-N. And in that case, it talked about how if a remand, a vacating of a district court's judgment breathes life into an issue that before then was not relevant to the case, that in that instance, the defendant ought to be able to bring up that issue. And as you mentioned just now, some of the courts refer to that as the sentencing package doctrine. And the concept there is that when the district court initially formulates his sentence in the original sentencing, he does so as a complete package, looking at all the sentencing guidelines for the convictions and looking at the supervised release terms. And then when the court vacates that judgment, that sentencing package is, in effect, unbundled. And because it's unbundled, the district court has the opportunity to reformulate his entire sentencing package again. Okay. Which order are we talking about? Because I'm a little concerned here. The Judge Muir, there's the either October 7th or October 8th. One is the oral and one is the written. But it really doesn't matter, does it, because isn't the Rule 35A motion out of, as the government motion says, because the district court didn't rule on the motion within the seven days set forth in Rule 35A. So don't we have to just sort of ignore the November 17th order and go back to the October order? Or am I wrong? I don't think you're wrong, Your Honor. I raised the issue in my brief because it seemed like sort of a white elephant in the room. Which is the issue? I'm sorry. We filed a notice of appeal to the October 8th judgment. Okay. So we definitely have jurisdiction over the October 8th judgment. Yes. Right? And the government says not on the November 17th order, right? Yes, but I think they would say the same about the October. But if Mr. Smith... Well, no, excuse me. Let me just follow that up. Well, does the government, is it your understanding, well, Mr. Smith can speak for himself, and as I know from experience, he does. But does the, so that what's before us now is the October 8th order. Yes. Right? Yes. And did your client object to the October 8th order? Yes. On the conditions of the supervised release? Yes. So what's the problem? Well, the problem is, as the government sees it, well, first of all, let me say, we don't think there's a problem. But what the government sees is... And he objected and he said it's too long? Yes. Life is too long? Yes. And these specific things shouldn't be? Correct. Okay. But if Mr. Smith is right, you lose at the very beginning, because you waived the issue. If you're not willing to follow a de novo or a sentencing package rule, then we do lose, yes. All right. But if you don't lose, then we have to consider which order we are reviewing. The one exception to that is, if we are reviewing, if this Court is reviewing the October 8th order, the district court did not make much in the way of findings about... Is there a big difference, Mr. Kraus, between the two? Yes. But they're both life. They both have supervised release. Oh, I'm sorry. The specific terms are not different. That's what I understood. Yes. The specific terms are not different. Sure. But Judge Muir, as to the October 8th issue, did not enter specific findings, which this Court seems to think are very important. Is there any relief you can get out of the Rule 35 order that you can't get out of the October decision? Well, the November order did modify number three, which was the associational condition. And I think that's something that this Court has already approved that kind of modification. And I believe Mr. Smith, in his brief, conceded that that would probably be acceptable to the government. There was also a change, a slight change, in conditions number four and seven, which, again, slightly favor the defendant. The one thing it did not do, which the government suggests is implied in that change, is to say that the probation officer's approval of computer use should not be unreasonably withheld. That's the interpretation that the government gives it, but it's not explicit in that condition. And we would certainly urge that it be made explicit. Okay, Mr. Cross. Let's hear from Mr. Smith. Thank you. His name has been invoked. May I please the Court? My name is Ted Smith. I'm an assistant U.S. attorney for the Middle District of Pennsylvania in Harrisburg, representing the United States, who is the appellee. I think Poltrone is an unjumpable hurdle for the defense here. The mandate in Poltrone was virtually identical to the mandate here, and it was essentially we vacate the judgment of the district court and remand for proceedings consistent with this opinion. There was a very specific reason for that remand, that the court reversed the district court. Was that because, if my memory serves me correctly, there was a failure to impose a minimum mandatory? Yes, but there was a pretty specific reason here for the court to issue that mandate. Here, the court, and indeed, its mandate at the end of its discussion of the double jeopardy issue in Miller 1. My point is that there wasn't a whole resentencing in Poltrone. There was a direction to impose a minimum mandatory, whereas in this present case, there was a complete resentencing that the defendant could address. Well, there was a directive to impose sentence on one of two counts, and then there was a directive via the opinion, the reason of the opinion, not to impose a certain enhancement for obstruction of justice. But I think the remand was as specific here as it was in Poltrone. It certainly was not a sentencing package that required any great effort to retie after it had been untied. The district court had no difficulty recalculating the guidelines, indeed, even after the district court changed its mind at the resentencing, having twice said that it would sentence on possession, it was very easy for the district court to recalculate. But that makes a difference, doesn't it? Receipt is a more severe crime than possession. Yes, Your Honor, but it was very easy for the district court to make that adjustment and to make it on the fly. Having done that, couldn't the district court then say, all right, all I've got here is possession, and therefore, this is what I'm going to sentence? Well, yes, the court did that as far as custody is concerned, but on supervised release, no, the court couldn't. Why? Why do you distinguish the conditions of supervised release from the length of, and it wasn't really the length, he didn't change the length of the sentence, did he? Yeah, no, he did. He did change the length of the sentence. He lessened it. He lessened the custodial sentence. So he says this guy isn't that, this guy isn't a danger, isn't that much of a danger. The reason the court couldn't do it is that the defendant had as much motivation and as much opportunity, if not more, to challenge the conditions and the length of the supervised release term the first time around. Yeah, but he certainly didn't have as much push, as much incentive to worry about the Well, he, I agree. He didn't feel aggrieved by it the first time around. But if he didn't. He didn't think about it that much. If he didn't, well, I think he did. I think, I suspect he thought about it. I suspect, and of course. But obviously, his motivation was to get out of jail ticket faster than he would have under the original sentence. Yes. But that jail term, a couple months longer, followed by a lifetime of supervised release, was as onerous the first time. In fact, it was more onerous because there was more jail time at the beginning of it. So he had every reason and every opportunity to challenge it. Why does a 63-year-old man have to be under supervised release for life? Well, that's actually something that actually distinguishes this case in a favorable way from the Volcker case. The life term, with all due respect to all of us who are, you know, getting a little, you know, long in the little gray there. I was just going to say that. That may be you, but not me. I'm referring to myself, Your Honor. Okay. The life term for this man is much shorter than the life term of supervised release for a 35-year-old man who was the man at that issue in Volcker. He's 62 years old. And I think the Court has expressed some very good reasons for being concerned about recidivism in the case of this defendant. I mean, this isn't a guy who tried to meet somebody online who, you know, he just, if you take the conviction for what it is, he had, is this the guy with the 11? That's correct. I mean, he had all these adult pornography, which is not against the law, and 11 little frames of child pornography stuck in there. We've all seen these cases, Mr. Smith, and you certainly have, and you've got to concede that by comparison to so many we've seen, this one just ain't nearly as bad. Oh, I concede that this case is not as egregious as many other receipt of child pornography cases, but this Court held in its first opinion, first Miller decision, that there was sufficient evidence to show that he had downloaded child pornographic images from the Internet. We're not talking about culpability. We're talking, this whole appeal is about a sentence. I understand. And the district... And the purposes of the sentence in 3553? A. A. It is to take into account the nature and circumstances of the offense and the history and characteristics of the offender, and I think Judge Muir did that here. You know, one question I would have is, I mean, considering the spectrum of criminal behavior and what this defendant did, who would qualify for anything less than a life term of supervisory release? It would seem that he would be the ideal candidate. Well, I think, first of all, the guidelines themselves, which I know are advisory, but in an advisory fashion, say, when it's a sex, a matter of sexual abuse of children, which child... This is not sexual abuse of children. Well, even possession of child pornography is, okay? And the guidelines say, and there's no question about this, that the guidelines counseled a lifetime term of supervised release here. So the district judge... By the way, there was no objection at either sentencing to the lifetime term. After sentence was imposed, counsel objected to the conditions. Counsel never objected to the lifetime term. And prior to sentencing... But that's the waiver issue. Well, no, no. That's a different waiver issue. That's an issue that suggests this is not properly preserved, beyond the not objecting to it in the first appeal. And we think that is a we think that's a jurisdictional bar to its consideration here, and we think Pultrone holds that. And we think the decision that the Court made in an unpublished decision in Mornin, I believe, Your Honor, was on that panel, if not the author. But it's an unpublished decision of a panel of the Court, I understand. But... Is life supervised release, does that go beyond what is necessary to meet the purposes of the sentence? Tell us why. Judge Muir thought that it was... No, no, you tell us why. Because this defendant has never owned up to what he did. And it's clear, it's obvious... I did this, this is what I did. He would be entitled to 10 years supervised release instead of life. I think if the defendant had ever, ever said, I was wrong in what I did and I want to change what I do, that perhaps it would be a different calculus. Actually, isn't it he who gave the FBI agent the disc or the tape that contained the offending images? They seized the disc and they then went to him and asked for the password and he gave them the password, which showed that he clearly had knowledge of what was, and sole access to that disc. Isn't he the guy who used to be an officer? I mean... Corrections officer. He had been a state correctional officer. He had been a state correctional officer, not otherwise a law enforcement officer. But I think, I think Judge Muir had very good reasons for feeling that this man, who repeatedly denies, he continues to deny that he's done anything wrong. He continues to deny that he even possessed the child pornography, much less the other disturbing material. But there was nothing to show that he focused on the child pornography in his computer. He didn't put in, however you do it, and I don't know, but he didn't put in child pornography or any of the terms that would, it came in with all this adult pornography, which he obviously was interested in. Well, except that the initial... For reasons I don't understand, but that's beyond the point. The initial thing that caused them to even be looking at him was his, his computer address coming back... From somebody who sent it, I guess. From, yes, from Utah, I believe it was. But... Utah, that's interesting. But... Senator Hatch then. But... Hatch. All right. Yeah. Go ahead. I do want to get back, though, on the term. The distinction I wanted to make is not only was this not raised in his prior appeal, but Judge Muir had absolutely no reason to believe that the defense was contesting the appropriateness of a lifetime term of supervised release. I wanted to take you back to that, because isn't there, and I will grant you it's not a specific objection, but there was something in the nature of a general objection, I've been trying to find the page in the, in the record, where defense counsel did object on, as being reasonable or as being unreasonable. No. No, the defense, knowing that the United States was advocating a life term and that the PSR for a, quote, reasonable, unquote, term. And Judge Muir highlighted that as he, as he imposed sentence and said, said it, counsel said it orally, too, at the sentencing proceeding. Perhaps you're right. I don't believe so. If I may. No, you may not. He'll have his opportunity to, on, on, on rebuttal. Yeah. Go ahead. Judge Smith. Do you want to? I, I, I, I, my, my recollection was, was that there was, there was at least at a very general level a concern expressed about the reason for the expulsion. Well, I. There was a concern expressed about the lifetime ban on using the internet? After sentence was imposed, counsel said to the court, I think the three conditions, the that, that they're necessary and that they're narrowly tailored. Could you comment that in light of U.S. v. Freeman, which indeed discussed the lifetime internet ban? Well, a couple things. First of all, as amended, but even without the amendment, I think if you take condition seven and read it in pari materia with condition four, four was the one that said no internet use without. What was seven? The inspection and. Without permission of the probation officer and then seven was the one that imposed conditions of inspection and also imposed conditions of putting a filtering device, monitoring. So I think. Doesn't that address putting in a filtering device? I think seven contemplates that at the appropriate time, the probation officer will not unreasonably refuse permission to to have internet access. It doesn't say that. But well, but it says. I mean, you know, the court, I think in its November order, clarified that it believed that seven modified four and it put them together for that reason. I mean, your argument on 30 rule 35A is that the November, we have to ignore the November order. That's actually not my argument. That's my that's my colleague's argument. I happen to agree with him. I think under 35A. We lack jurisdiction. I think that this. No, it's not that you lack jurisdiction. The district court lacked jurisdiction to change my opinion in Hibbs or whatever. So so I think we're in agreement on the rare occasions when Mr. Krause and I agree. I think we're in agreement on that. I, I maintain that you lack jurisdiction because he did not raise this issue in the first appeal and that Poltrone is pretty clear that that that that's the case. And this court's unpublished decision citing Poltrone in in the morning decision. That's was a book. Booker. You know, you know what we think of our unpublished opinions and they're not unpublished now. They're not presidential and this court, by the way, this court has never banned the citation of non-presidential opinions. I think I've been it for ourselves, at least to the extent that they say, but but the court has has even said that it's not precedential opinions can be used as a paradigm for what the court should do in a given situation. And in the morning case, it was a Booker resentencing and the court held that it couldn't go back and and attack a guidelines calculation issue. I see my red light has. Do we have any more? Let's see. Do we have any questions for him? Do you have any questions? We don't have any questions. Thank you. Thank you. Mr. Krause. Mr. Krause, what I was looking for, I did locate, and that was that one of your colleagues in your office at the resentencing asked for, in addition to time served, a reasonable period of supervised release, which by definition I would think would have to be less than life. Yes, I think that's pretty clear. Also, if at Appendix 95, which was during the sentencing hearing, counsel said, for the record, we would object to the conditions of supervised release because I do not believe that they are reasonably related to the offense conduct in this case. I mean, in each case, reasonableness was at least explicitly raised. Yes. Mr. Smith says your client is 62 years old or 63, that maybe life expectancy was taken into account in setting that term, and it is an abuse of discretion standard, and convicted of receiving child pornography, which is deemed a serious offense. Well, now, possession. Possession. The lesser. Yes. Yeah. Why isn't that, why is it an abuse of discretion to sentence him to a life term of supervised release? Well, one aspect of that, Your Honor, is that if we're going by, if we're not going to look at the November 17th order, which, in which Judge Muir did go into considerable detail about why he was, wanted to impose these terms. Can we look at that just for the court's reasoning as opposed to preservation of issues on appeal? Is that all right? I think if it's invalid, then it's invalid. And then I think we have to look at the October 8th judgment, and that judgment did not include any specific discussion of how the terms and conditions related to this particular defendant. And I know in the Kenwick case, which Judge Smith was on the panel of, it was for that very reason that the court found that it vacated a special condition prohibiting possession of explicit materials. So this court has taken very seriously the importance of the district court tailoring, being very explicit about why the terms and conditions of the supervised release are tailored to this particular client. Among this restricting, which one do you most subject to of the conditions? Number three. What's that? Which is the associational. The children? Yes. With minors. Yes. Also, of course, the life term. Well, yeah. We've talked about that. Four and seven. And there's nothing to show that he's likely to abuse a minor, is there? Not at all. He has no criminal history. He never touched, whenever he was accused of touching anyone, and just as a matter of emphasis, Judge Rendell in Miller 1, in her concurrence and dissent, concluded from her point of view, there is simply no non-speculative evidence that would tend to show, let alone prove beyond a reasonable doubt, that Miller received the 11 images knowing they were child pornography. And again, this was 11 images out of thousands of adult pornography images, and the government provided no evidence of how he got those images, or whether he knew that he got them. What the sentencing judge said in the Rule 35 decision is that these types of offenses result in a high rate of recidivism. But we don't have to look at Rule 35, I think, in order to come to that conclusion, or we can read it in other cases. Isn't that a sufficient basis to sentence someone to a lifetime of supervised release? That is, the high rate of recidivism? I'm not sure where in the record there's anything to support that conclusion. Let's assume that there is. I understand it's a conventional wisdom, but there's a fair amount of literature that, particularly for a client like this, who never touched anybody, never approached anybody, wasn't trying to lure anybody into any kind of sexual activity. All he was doing was sitting at his computer, and happened, apparently, to download some child pornography while he was really interested in looking at adult pornography. Okay, thank you. Thank you, Your Honor. I'd like to talk to both of you, which has nothing to do with this case. Come on up. Turn off the mic, completely.